## MOSS v. RIDDLE & CO.

· ERROR to the circuit court for the district of Columbia, in an action of debt upon the joint bond of Welsh and Moss for the payment of money.

Welsh, who was the principal debtor, not being found in, and not being an inhabitant of, the district of Columbia, the suit abated as to him.

· The defendant Moss, in his *first* plea, after pro-

*A bond can-not be delivered to one of the obligees, as an escrow. Fraud consists in intention; and that intention is a fact which must be averred in a plea of fraud.*

Moss
v
RIDDLE.

testing that he did not deliver to any person, un-conditionally, as his act and deed, the writing in the declaration mentioned, averred that he signed and

To show that the lands attached by Waters was the 386 acres located on the plats as being in the possession of the Baltimore company, the plaintiff read in evidence the lord proprietor's old rent-roll, stating 870 acres to be in possession of Rawlins, and 130 in the possession of John Barker. And the last rent-roll stating 419 acres to be in possession of Scarth, and 385 in the possession of Charles Carroll & Co.; and the lord proprietor's debt-book for the year 1754, (being the oldest book of that kind remaining,) which charges the Baltimore company with the quit-rents of 386 acres and no more, and Scarth with 419; which charges were continued annually until the revolution. And the defendant thereupon prayed the opinion of the court, that by virtue of the said judgment and attachment and condemnation by him given in evidence, a legal estate was vested in the said Littleton Waters in the said tract of land called Brown's Adventure. But the court were of opinion, and so directed the jury, that the said Littleton Waters did not acquire a legal estate in the said land by virtue of the said judgment, attachment and condemnation.

The 4th bill of exceptions stated the same facts, and further that the defendant read the act of assembly passed at November session, 1797, c. 119. and prayed the opinion of the court, that by virtue of that act the right of the state was so far vested in the persons possessing the land called Brown's Adventure under the condemnation aforesaid, that the plaintiff could not in virtue of his said warrant, certificate and patent have any right or title to the said land; or, if any, then no more than the proportion or compensation to which a discoverer of confiscated property is entitled. But the court were of opinion that the right of the plaintiff to Brown's Adventure attached upon his obtaining the warrant of escheat, and that his right was saved and protected by the proviso in the 2d section of the said act of November, 1797, c. 119. And that the grant transferred to him the interest the state had in the land called "The Discovery" from the time of his obtention of his said warrant of escheat.

The 5th bill of exceptions states the same facts, whereupon the defendant prayed the opinion of the court, and their direction to the jury, that if the warrant of escheat which issued in this case, issued without authority of law, then the warranty contained in the act of November, 1781, c. 20. § 8 did not operate to give title to the plaintiff, and that there can be no relation to a warrant which issues without authority of law, or to a certificate made in pursuance of such warrant.

But the court were of opinion, that the act of 1781, c. 20. § 8. did secure to the plaintiff the said land so by him escheated on his paying two-thirds of the value of the said land, being what the plaintiff was liable to pay for the same as confiscated British property; and that the grant obtained by the plaintiff did operate to pass the land to him by relation from the date of the said warrant.

The 6th bill of exceptions also stated the same facts, and that the defendant thereupon prayed the court to direct the jury that if the said tract of land called Brown's Adventure belonged to a British subject at the time of passing the act for confiscating British property in the state of Maryland, and if no actual possession had been taken thereof by the said state or its agents, and no sale or disposition made

sealed the same, and delivered it to *Joseph Riddle*, one of the plaintiffs, *as an escrow*, to be his act and deed, on condition that the same should afterwards

thereof by the state to any person at any time before the treaty between the United States and Great Britain dated the 19th of November, 1794, took effect, the plaintiff could make no title thereto by his said warrant, certificate and patent.

But the court refused to give that direction to the jury, being of opinion, that the state of Maryland, by their commissioners, was in possession of all British property within the limits of the said state, under and by virtue f the act of confiscation, October, 1780, c. 45. and the act of the same session, c. 49. to appoint commissioners, &c. And that the possession of the said land was in the state of Maryland at the time the plaintiff obtained his escheat warrant; and that no British subject could hold land in the state of Maryland on the 19th of November, 1794, the time when the treaty was entered into between the United States and Great Britain.

The 7th bill of exceptions, in addition to the facts before mentioned, stated, that the defendant offered evidence that the heirs of Rawlins were still living in Maryland. That Rawlins, in the year 1741, made his will and devised Brown's Adventure by name to some of his children. That the heirs of Littleton Waters are still living in Maryland. That the Baltimore company, under whom the defendant claims, have been for fifty years past in the actual possession and user of the whole land called Brown's Adventure, by clearing and cutting the wood off the said land for their iron works, and claiming the said land; and that there has been no actual or mixed possession of any part of the said land by *Scarth*, or by any person claiming under him, or by any person claiming adversely to the Baltimore company. Whereupon the defendant prayed the court to direct the jury, that if they find the facts stated by the defendant to be true, and that no payment of principal or interest due on the said mortgage, or acknowledgement of the said mortgage, was at any time paid, made or done, on or after the 13th of May, 1709, the jury may and ought to presume the said mortgage satisfied before the year 1780, and that the plaintiff is not entitled to recover. But the court were of opinion that the facts stated in the above case will not warrant the jury in presuming the said mortgage was satisfied before the year 1780, and refused to give the direction prayed.

The 8th bill of exceptions states the same facts, and that the defendant further prayed the court to direct the jury, that if the facts are found true as stated by the defendant, the act of confiscation of October session, 1780, c. 45. and c. 49. vested no beneficial interest in the state of Maryland in the lands in the mortgage from Rawlins to Scarth, but that the same, if it vested in the state under the act of confiscation, was liable to the equity of redemption in the heirs of Rawlins, the mortgagor, and that by operation of the British treaty, so far as the mortgagee could claim an interest in the said mortgaged lands, the same was saved from confiscation by the said treaty, and, consequently, the lessor of the plaintiff is not entitled to recover.

But the court were of opinion, that on the expiration of the time limited in the mortgage for the payment of the money, a complete legal estate of inheritance vested in the mortgagee liable to confiscation, and was vested in the state in virtue of the act of confiscation of October session, 1780, c. 45. and the act of the same

Vol. V. Y y

Moss
v.
Riddle.

be signed, sealed and delivered by some other friend of Welsh, which was not done, and so the said writing is void as to him the said Moss.

To this plea the plaintiffs demurred specially; 1st. Because a bond cannot be delivered to the obligee himself as an *escrow;* 2d. Because the plea does not state by what other friend of Welsh it was to have been executed; 3d. Because it did not state by whom the execution of the bond, by that other friend was to have been procured, leaving it uncertain whether the condition upon which it was to become the deed of Moss was to be performed by him, or by Riddle, or by Welsh; 4. Because the plea is repugnant, inconsistent and informal. The *second* plea, after protesting as in the first plea, avers, that Riddle came to the defendant and asked him whether Welsh had not applied to him, Moss, to be his security for a debt due to Riddle & Co.; to which Moss replied he had told Welsh he would not be security alone, but would join Welsh and some other friend of his as security for the debt, whereupon Riddle represented that the greatest confidence was placed in Welsh; that

session, c. 49. to appoint commissioners, subject to the right of redemption in the mortgagor and his heirs, and that the British treaty cannot operate to affect the plaintiff's right to recover in this ejectment, and refused to give the direction prayed.

The 9th bill of exceptions, in addition to the same facts, states, that the defendant offered in evidence a lease and release from Littleton Waters to Benjamin Tasker and others, dated June 20, and 21, 1738, of so much of Brown's Adventure as, according to a valuation upon oath returned to the provincial court, would amount to 145*l*. 1*s*. 5*d*. sterling, and thereupon prayed the court to instruct the jury, that if they find the facts as stated by the defendant, the deeds of lease and release from Waters to Tasker and others conveyed a legal title in the lands therein mentioned; and that if a legal title did not pass, then the jury may and ought to presume a title in the said Tasker and others to the whole of an undivided 386 acres of land, being an undivided part of the 870 acres of land mortgaged to Jonathan Scarth, called Brown's Adventure. But the court refused to give the direction prayed.

The 10th bill of exceptions states, that upon the same facts the defendant prayed the court to direct the jury that as to all that part of Brown's Adventure contained in the deed from Waters to Tasker and others, under whom the defendant claims, the patent granted to the plaintiff does not give him a title thereto, or enable him to recover the same, which direction the court refused to give.

the partnership of Riddle & Co. was about to be dissolved; that Riddle would take care to keep that paper, if it was executed, in his dividend of the debts; that Welsh and Moss might sign the bond at that time, and some other person might sign it afterwards; that in regard to the debt he would look only to Welsh, and would also give Welsh a credit for goods, when he, Riddle, should open and commence business on his private and individual account. The plea further avers, that Moss being induced by that representation and promise, did sign, seal and deliver the writing, upon condition that some other friend of the said Welsh should also sign, seal and deliver the same, and not otherwise; which was never done. That Riddle did afterwards carry on trade and merchandise, on his own separate and individual account, but never afterwards credited Welsh with any goods or merchandise; "and *so* the said writing made and executed as aforesaid is void as to him the said Robert Moss."

To this plea the plaintiff also demurred specially, for the causes stated in the first demurrer; and further, because the plea is multifarious, argumentative, and offers to put in issue a number of matters unconnected with the defence set up, and immaterial in themselves.

The court below gave judgment for the plaintiffs upon both demurrers.

Before the judgment was entered by the clerk, the defendant below prayed leave to amend his first plea, by striking out the words " delivered to Joseph Riddle, one of the plaintiffs in this cause," and inserting in lieu thereof the words " placed in the hands of Joseph Riddle, one of the plaintiffs in this cause." But the court refused leave to make the amendment. To which refusal the defendant excepted.

Afterwards, and after the court had pronounced judgment in the cause, the defendant moved the court for leave to file an amended plea, which was in

Moss
v.
Riddle.

all respects like the 2d plea, except that it averred that Riddle stated it to be the rule of the plaintiffs to take specialties for their debts if they could be obtained, and that the bond was delivered to Riddle in the *absence of the other plaintiff*, and except also that the conclusion was as follows: " and *so* the said defendant saith that the said writing, made and executed as aforesaid, was obtained by deception and fraud, *as aforesaid*, as to him the said Robert Moss, and, by reason of the *said* deception, is void as to him the said Robert Moss; and this he is ready to verify." But the court refused to suffer the plea to be filed, being of opinion that it would be bad upon demurrer. To this refusal also the defendant took a bill of exceptions.

*C. Lee* and *Swann*, for the plaintiff in error.

The plea of escrow was good. An instrument may be delivered to one of the parties as an escrow. *Pawling* v. *United States*, in this court.

It was not delivered to the plaintiffs, but to one of them only. It was not delivered absolutely, but upon condition that it should also be executed by another person also.

The plea of fraud also was good. It is not necessary to aver *fraud* in a plea. If the facts themselves show fraud, it is sufficient. Any thing that avoids the deed may be pleaded; and the conclusion, " *and so the said writing is void*," is proper and sufficient. It is not necessary to say it is not his deed. 2 *Wils.* 352. *Collins* v. *Blantern.*

*E. J. Lee* and *Jones*, contra.

An instrument cannot be delivered as an escrow to a party who is to derive benefit under the deed. It must always be to a stranger. *Shep. Touch.* 55, 56, 57. *Hob.* 246. 3 *Bac. Abr.* 320. 694. *Esp. N. P.* 221.

The 2d plea is not a plea of fraud. It is an at-

tempt to set up as a discount or set-off against a
bond, an unliquidated claim for damages for breach
of a promise.

The facts stated do not amount to fraud. Fraud
consists in the intention, the *quo animo*, which is
not averred in the plea; and fraud can never be pre-
sumed, especially if it be not averred. 1 *Vent.* 9.
210. 3 *Bac.* 320. 1 *Fonb.*

### March 13.

MARSHALL, Ch. J. delivered the opinion of the
court to the following effect:

It is admitted by the counsel in this case, that
a bond cannot be delivered to the obligee *as an es-
crow.* But it is contended that where there are seve-
ral obligees constituting a copartnership, it may be
delivered as an escrow to one of the firm. The court,
however, is of opinion that a delivery to one is a
delivery to all. It can never be necessary to the
validity of a bond that all the obligees should be
convened together at the delivery.

Upon the other point the counsel for the plain-
tiff in error has insisted that the plea is sufficient.

But the court thinks it so radically defective as
to be bad even upon general demurrer.

There is no allegation of fraud, and the circum-
stances pleaded do not, in themselves, amount to
fraud.

Fraud consists in intention, and that intention is
a fact which ought to have been averred, for it is
the gist of the plea, and would have been traversa-
ble.

Upon what was the plaintiff below to take issue?
Upon all the circumstances stated in the plea which
are mere *inducement*, or upon the conclusion that
" the bond is void?" If he had traversed the
inducement, the issue would have been immaterial:

Moss
v.
RIDDLE.

if he had traversed the conclusion, it would have been putting in issue to the jury matter of law.

Judgment affirmed with costs.

*C. Lee* suggested that there was also an exception to the refusal of the court to allow an amended plea to be filed, after the court had adjudged the pleas bad.

But the *Chief Justice* said that the court had, in an early part of this term,* decided that such refusal was no error for which the judgment could be reversed.

* See the case of *Mandeville and Jamesson v. Wilson,* at this term, *ante, p. 15.*